```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

| | |
|---|---|
| **REM PROPERTIES,**<br><br>               Plaintiff,<br><br>    v.<br><br>**EXXONMOBIL OIL CORPORATION, d/b/a MOBIL; INDUS OF ILLINOIS, INC.; and AMJAD KHAN, Individually,**<br><br>               Defendants. | Case No. 22 C 5108<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff, REM Properties ("REM") filed a four-count Amended Complaint [Dkt. No. 8] against Defendants ExxonMobil Oil Corporation ("ExxonMobil"), Indus of Illinois, Inc. ("Indus"), and Indus' owner, Amjad Khan ("Khan") (Indus and Khan collectively, the "Indus Defendants"), alleging violations of federal and state law after hazardous substances from Defendants' gas station contaminated REM's property. The Indus Defendants filed a Motion to Dismiss the state law claims in Counts II, III, and IV on statute of limitations grounds [Dkt. No. 25]. Movants requested that this Court take judicial notice [Dkt. No. 43] of public records for the purpose of establishing Indus's statute of limitations defense.

For the reasons stated herein, the Court denies the Indus Defendants' Motion to Dismiss. In so doing, the Court denies Movants' request for Judicial Notice.

## I. BACKGROUND

Plaintiff seeks relief under the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. §6901, *et. seq.* and Illinois common law, through four counts: Counts I (RCRA § 6972(a)(1)(B)), II (Negligence), III (Private Nuisance), and IV (Trespass); damages from previous contamination; and enjoinment of Defendants from further contaminating the REM Property. (REM First Amend. Compl. ("Compl.") ¶ 1, Dkt. No. 8.) The Indus Defendants move for dismissal of the state law claims in Counts II, III, and IV on statute of limitations grounds, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 25) with the Court's consideration of an additional 264 pages naming four exhibits (Dkt. Nos. 43, 43-1).

### A. REM's Complaint

The Complaint alleges the following facts.

Plaintiff REM Properties ("REM") is an Illinois general partnership. (Compl. ¶2, Dkt. No. 8.) Plaintiff owns property located at 7900-7916 South Austin Avenue, Burbank, Illinois, 60459 ("REM Property"), which includes a multi-tenant office building. (*Id.*) Defendant ExxonMobil ("ExxonMobil") is a New York

corporation that previously owned and operated a former ExxonMobil Station on the property located at 6027 West 79th Street, Burbank, Illinois, 60459 ("Gas Station") for "many years." (Compl. ¶ 3.) Defendant Indus ("Indus") is an Illinois corporation that has owned and operated the Gas Station since 2000 (Compl. ¶ 4), and Defendant Amjad Khan ("Khan") is an individual resident of Illinois who serves as the President, sole shareholder, and sole Director of Indus (Compl. ¶ 5) (Indus and Khan collectively, "Indus Defendants" and "Movants").

Defendant ExxonMobil utilized, and Defendants Indus and Khan continue to utilize, an underground storage tank ("UST") system on the Gas Station property. (Compl. ¶ 11.) The system includes tanks, piping, pumps, and related systems, to store and manage petroleum products for the Gas Station's commercial operations. (*Id.*) These petroleum products contain numerous hazardous substances, including benzene, toluene, ethylbenzene, xylene ("BTEX"), and others (collectively "hazardous wastes"). (*Id.*) For thirty years, a leaking UST at their gas station released hazardous substances. (Compl. ¶¶ 3, 6, 11-13.)

In 1989, during ExxonMobil's ownership of the property, ExxonMobil reported a UST leak at the Gas Station to the Illinois Environmental Protection Agency ("IEPA"). (Compl. ¶ 12.) This gas leak stemmed from three different USTs on the property: an 8,000-

gallon gasoline tank, a 6,000-gallon gasoline tank, and a 4,000-gallon gasoline tank. (*Id.*) The IEPA assigned the 1989 UST leak incident number 892477. (*Id.*) In 2002, during Indus and Khan's ownership of the property, a subsequent UST leak at the Gas Station, stemming from a 1,000-gallon used oil UST on the property, was reported to the IEPA. (Compl. ¶ 13.) The IEPA assigned this 2002 leak incident number 20021427. (*Id.*)

Plaintiff alleges that they were unaware of any such pollution on REM Property until February 2020, when ExxonMobil provided Plaintiff with a request for restrictions on its property. (Compl. ¶ 11.) At that time, Defendant ExxonMobil requested that REM sign an Environmental Land Use Control agreement ("ELUC") forever restricting the use of the REM Property and requiring the installation of a toxic vapor mitigation system on REM's building to attempt to mitigate the effects of Defendant's contamination, so that ExxonMobil could obtain a "No Further Remediation" ("NFR") letter from the IEPA. (Compl. ¶15.) Plaintiff alleges that the levels of BTEX discovered on the REM Property have significantly exceeded limits established by safety standards, and that these chemicals have been present on the property for more than three decades. (Compl. ¶ 11.)

**B.  Indus Defendants' Motion**

Indus Defendants requested that the Court take judicial notice [Dkt. No. 43] of 264 pages comprising four "exhibits," namely:  Exhibit 1, a December 22, 2016 Amended Correction Action Completion Report and Amended Corrective Action Budget Report; Exhibit 2, a March 16, 2017 No Further Remediation Letter; and Exhibit 3, the Illinois Secretary of State Certificates of Good Standing for the REM Property. (Request for Judicial Notice ("RJN"), Dkt. No. 43; RJN Exhibits, Dkt. No. 43-1.) Movants ask this Court to consider these documents to support their contentions that (1) the remnants of hazardous waste were only residual from the UST tanks already removed from the property decades earlier, and (2) Plaintiff knew or reasonably should have known by 2016 about the contamination.  With an establishment of these two facts, Defendants argue, the Complaint is time-barred.

Exhibit 1 contains a "Corrective Action Completion Report" plus at least 18 appendices, (RJN Exhibit 1, Dkt. No. 43-1 at 1-216.) The exhibit shows that on November 9, 2016, Gabriel Environmental Services ("Gabriel"), on behalf of Defendants, sent an Environmental Services Letter to Plaintiff, stating that soil and/or groundwater at the REM Property has been contaminated by a UST formerly located at the Gas Station that contained petroleum product. (RJN Exhibit 1 Gabriel Request for Property Access

("Gabriel Letter") at 1, Dkt. No. 43-1.) The exhibit included attached plume maps and sampling results that showed the contamination of the REM Property, as well as contamination in samples taken from the property. (*Id.*)

Exhibit 2 consists of a No Further Remediation Letter ("NFR Letter") from the IEPA. (RJN Exhibit 2, Dkt. No. 43-1 at 217-241.) On March 16, 2017, Gabriel obtained a NFR Letter from the IEPA for the Indus Defendants with respect to the formerly used oil tank. (Exhibit 2 at 221.) This letter specified that Gabriel had demonstrated, to the IEPA's satisfaction, an inability to obtain access to the REM Property. (*Id.*) It also stated that "[i]ssuance of this Letter does not relieve the owner or operator of the responsibility to clean up a release that has migrated beyond the property boundary even where off-site access is denied." (*Id.*)

Exhibit 3 constitutes Illinois Secretary of State records including certificates of good standing for REM Properties III, LLC. (RJN Exhibit 3, Dkt. No. 43-1 at 242-248.)

Exhibit 4 contains an opinion in *Richburg et al v. ConAgra et al.,* Case No. 22-CV-2420 (Feb. 8, 2023), issued by Judge Gettleman in this district. (RJN Exhibit 4, Dkt. No. 43-1 at 249-264.)

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that

- 6 -

is plausible on its face." *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept [ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (cleaned up). Under Rule 12(b)(6), "dismissal of an action . . . is warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone,* 483 F.3d 454, 458 (7th Cir. 2007) (cleaned up).

"A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Tobey v. Chibucos,* 890 F.3d 634, 648 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012)); *see* Fed. R. Civ. P. 10(c); *see also Dean v. Nat'l Prod. Workers Union Severance Tr. Plan,* 46 F.4th 535, 543 (7th Cir. 2022). The Federal Rules allow a court to take judicial notice of public records with "traditional caution." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997). Pursuant to Federal Rule of Civil Procedure 12(d), if a moving party relies

on additional materials, the motion must be converted to one for summary judgment under Rule 56. *Geinosky,* 675 F.3d at 745 n.1; *see* FED. R. CIV. P. 12(d). Only when a fact is "not subject to reasonable dispute," FED. R. EVID. 210(b), may a district court exercise the "narrow exception" to Federal Rule of Civil Procedure 12(d) that "permits a district court to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Doss v. Clearwater Title Co.,* 551 F.3d 634, 640 (7th Cir. 2008); *see also Tobey*, 890 F.3d at 647–48; *Jordan v. Bonano,* 2022 U.S. Dist. LEXIS 193597, at *4 (N.D. Ill. 2022).

District courts may dismiss a time-barred claim when the untimeliness is obvious in the complaint. *See Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011) ("when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *e.g., Israel v. City of Chicago,* 2023 WL 2664011, at *2-3 (N.D. Ill. Mar. 28, 2023). While a 12(b)(6) dismissal may be proper for a cause of action that is "indisputably time-barred," *Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005), statute of limitation analyses "typically turn on facts not before the court at that stage in the proceedings." *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012). Thus, "[a]s

long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute of limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

### III. DISCUSSION

The Indus Defendants move to dismiss Plaintiff's alleged Counts II (Negligence), III (Private Nuisance), and IV (Trespass) under Federal Rule 12(b)(6) on the grounds that these claims are untimely, specifically because (A) the remnants of hazardous waste were only residual from the UST tanks already removed from the property decades earlier, and (B) Plaintiff knew or reasonably should have known by 2016 about the contamination. With an establishment of these two facts, Defendants argue, the Complaint is time-barred. To support these contentions, Movants ask this Court to consider hundreds of pages of documents under two alternate theories: (1) they are central to the Complaint, and (2) they are judicially noticeable as public records.

Under Illinois law, the statute of limitations for common law claims for real or personal property damage is five years. *See* 735 ILCS 5/13-205 ("[A]ctions . . . to recover damages for an injury

done to property, real or personal . . . shall be commenced within 5 years next after the cause of action accrued."). The accrual depends on whether the harm is traceable to a single overt past event causing residual present injuries, or instead whether each present injury itself constitutes a new tortious act. *See Feltmeier v. Feltmeier,* 798 N.E.2d 75, 85 (Ill. 2003). Plaintiff also contends, and Defendants do not meaningfully dispute, that Illinois applies a "discovery rule," which "delays the start of the limitations period until the claimant knew or reasonably should have known of the injury and that the injury was wrongfully caused." *Am. Family Mut. Ins. Co. v. Krop,* 120 N.E.3d 982, 987-88 (Ill. 2018) (cleaned up); *see also Roper v. Markle*, 375 N.E.2d 934, 939 (Ill. App. Ct. 1978).

### A. Contamination

In *City of Evanston v. Texaco, Inc.,* 19 F.Supp. 3d 817 (N.D. Ill. 2014), which also involved contamination from a gas station's underground storage tank to an adjacent property, the Court denied dismissal on limitations grounds when contamination first leaked fifty years prior to the action in court "because each discharge of contaminants onto the city's property constitutes a separate instance of nuisance and trespass." *Id.* at 827-28. Plaintiff's Complaint remains congruent with this theory. Plaintiff alleges that "toxic contaminants were first released by ExxonMobil . . .

prior to 1989, and continuing thereafter . . . ." (Compl. ¶ 3.) Plaintiff also references the "[r]eleases of the toxic chemicals during the operation of the Gas Station by Indus and Khan" (Compl. ¶ 6.) Defendants argue that "Plaintiff's complaint identifies no petroleum releases or incidents after 1989 and 2002." (MTD at 5.) While true those are the only two IEPA reported UST leaks identified by the complaint, (Compl. ¶¶ 12, 13), Plaintiff alleges that the "release . . . continu[ed] thereafter." (Comp. ¶3.) Plaintiff adds in its response that in April 2022, a Site Investigation Report confirmed, based on a sampling performed in November 2021, that contamination was present on the REM Property's soil, water, and soil gas. (Resp. at 7.) The allegation that the last thirty years saw at least two documented leaks of the same hazardous materials whose traces were found in 2021 renders some likelihood of a leak in the last five years or the ongoing release of hazardous wastes from Defendants' gas station onto the REM Property. Thus, the Court finds the Complaint adequately alleges incidents of contamination as late as 2021, such that the claims would not be time-barred by the time Plaintiff filed suit in 2022.

### B. Notice

Defendants' other argument that Plaintiff should have known in 2016 is based entirely on sources external to the Complaint.

Plaintiff alleges February 2020 as the time they were made aware of the pollution on REM Property. (Compl. ¶ 11.)

### 1. *Centrality to Complaint*

First, Movants argue Exhibits 1 and 2 are central to REM's claims because the Complaint references the leaking used oil tank incident reported in the IEPA administrative record, referring to it as "Incident 200221427" (Compl. ¶13) and it states the fact that the Defendants have sought an NFR (*see* Compl. ¶15), and these exhibits constitute administrative records on Incident 200221427 (Exhibit 1) and a NFR (Exhibit 2). Although Movants are correct that that the Complaint references these incidents, it would be too tenuous to consider those references to refer to the entirety of these materials and only these materials. Additionally, it is unclear that the NFR letter mentioned in the Complaint (*see* Compl. ¶15) refers to the 2017 NFR since Plaintiff did not know about it until 2020. In any event, Plaintiff appears to mention these items to give background on Defendants' knowledge, but the documents themselves are not "central." *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013). Therefore, the Court declines to consider them under the centrality to complaint argument.

### 2. *Public Records*

Alternatively, Defendants invoke Federal Rule of Evidence 201, which governs judicial notice of adjudicative facts, to urge

this Court to consider the facts contained in purportedly public records. Movants contend that all exhibits constitute matters of public record because the IEPA Administrative Record for UST Incident No. 20021427 contains Exhibits 1 and 2, which are also available on IEPA's website, because Exhibit 3 is available on the state Secretary of State's website, and because Exhibit 4 is a court document.

A fact is judicially noticeable when it is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). Documents that are part of the public record and reports by administrative bodies often fit this bill. *Bell v. City of Country Club Hills,* 841 F.3d 713, 716 n.1 (7th Cir. 2016); *Menominee Indian v. Thompson,* 161 F.3d 449 (7th Cir. 1998). While Seventh Circuit case law supports the argument that certain governmental records and reports constitute judicially noticeable public records, this designation is typically rooted in the documents' authority on the subject matter as opposed to their mere accessibility. *See, e.g., Hickman v. Wells Fargo Bank N.A.,* 683 F.Supp. 2d 779, 784 (N.D. Ill. 2010) (citing *Menominee Indian Tribe v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998); *see also GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997) ("Judicial notice is premised on

the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties. It is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence."). For instance, in *Menominee Indian Tribe*, the Seventh Circuit affirmed the lower court's judicial notice of treaties relating to the Native tribe's land rights because the contents of the treaties were not subject to reasonable dispute. 161 F.3d at 456. In *Richburg et al. v. Conagra Brands, Inc.,* 2023 U.S. Dist. LEXIS 21137 *5-6 (N.D. Ill. 2023), the Court took judicial notice of a report produced by the Food and Drug Administration ("FDA") on the authorized use of chemicals in certain food products, in part because its accuracy could not reasonably be questioned. *Id*. at *8-9. And in *Davis v. Potter,* 301 F.Supp. 2d 850, 856 (N.D. Ill. 2004), the Court took judicial notice of prior administrative proceedings in the case.

In each of these examples, the Court took judicial notice of public records, not because they were publicly available, but because they originated from authoritative sources that held credible expertise in the facts to be noticed. Thus, the Court considers the credibility of each document as to the respective purpose for which Defendants seek its notice.

*a. Exhibit 1*

Defendants seeks judicial notice of Exhibit 1, a 216-page report compiled by a private environmental services agency on their behalf (Dkt. No. 43-1), to demonstrate Plaintiff was put on "actual notice" of the contamination by November 2016 even if "actual notice is not necessary under Illinois' discovery rule." (Reply to MTD ("Reply"), Dkt. No. 47 at 6.) Defendants allege that Plaintiff was on notice as early as by a letter, dated November 9, 2016, contained in the exhibit stating that the agency, Gabriel, was retained by Indus to remediate soil and/or groundwater that has been contaminated from a UST formerly located on the Gas Station property. (*Id.*) Plaintiff denies receiving the Gabriel Letter, and further rejects that the letter itself would constitute sufficient notice. (Resp. at 13.)

While the report's existence and some of its contents may be judicially noticed, its contents need not be taken as "universal truth" at this stage in the case's proceedings. *GE Capital Corp*, 128 F.3d at 1081. Moreover, the purpose for which Defendants seek to introduce these records remains beyond the purview of judicial notice at this juncture. The records are introduced to refute Plaintiff's allegations regarding facts, including notice if the contamination. Though the Gabriel letter might confirm that Gabriel Environmental Services was enlisted to remediate the leak

that rose to Defendants' awareness, that much does not establish that this action is time-barred. The rest of Exhibit 1 fares no better. Neither does the argument that the accessibility of this information on a public website put Plaintiff on notice. Plaintiff cannot be expected to attain awareness of everything posted online, even by government sources. Therefore, the Court will not consider Exhibit 1 for the purposes for which Defendants seek.

### b. Exhibit 2

Similarly, the Court will not take judicial notice of Exhibit 2, the IEPA NFR Letter at this juncture. Exhibit 2 includes the IEPA's determination that Defendants had satisfied their legal remediation requirements because they were unable to access the REM property. (Dkt. No. 43-1 at 221.) Plaintiffs dispute that they denied access and maintain that they lacked awareness of contamination until nearly three years later. Citing a host of district court holdings within and outside this district in the last thirty years, Movants seem to argue accuracy of these records is not subject to reasonable dispute because the records are public. Not so. Plenty of contents in public records do not meet that bar in every circumstance. *See Tobey v. Chibucos,* 890 F.3d 634, 648 (7th Cir. 2018) ("Court records, like any other documents, may contain erroneous information.") Therefore, the Court will decline to notice Exhibit 2 as evidence of Plaintiff's notice.

*c. Exhibit 3*

Exhibit 3 includes certificates of good standing for REM Properties III, LLC. (Exhibit 3 at 243, Dkt. No. 43-1.) Plaintiff attests that REM Properties is a general partnership, (Compl. ¶ 2), and thus argues that this inaccuracy calls into question the credibility of Exhibit 3's content. Although this inaccuracy appears minor, Exhibit 3 demonstrates "matters that are arguably subject to reasonable dispute and therefore not a proper subject of judicial notice." *Tobey,* 890 F.3d at 648.

*d. Exhibit 4*

The Court accepts that Exhibit 4, a district court opinion of *Richburg et al v. ConAgra et al.,* Case No. 22-CV-2420 2023 U.S. Dist. LEXIS 21137 (Feb. 8, 2023), accurately portrays the record of that case, but this acknowledgment will not assure Movants prevail on their motion to dismiss. The Court considers the findings of other courts in this district as persuasive authority and nevertheless finds this one distinguishable. Notably, In *Richburg,* Judge Gettleman noticed an FDA-produced report on the authorized use of chemicals in certain food products for limited purposes to find that a putative class failed to state a claim. *Id.* at *8-12. Judicial notice was taken in part because the accuracy of the FDA report as to the FDA's own rules and enforcement thereof could not reasonably be questioned. *Id.* at *8-

9. Yet, Judge Gettleman rejected the defendant's arguments seeking judicial notice of facts regarding testing methodology and analytics at this stage because they would be "proper subjects for discovery." *Id.* at *12. So, too, are the presence, path, and time of hazardous materials on the REM Property and the time at which Plaintiff was on notice. Furthermore, there was no statute of limitations argument. *Id.*

Ultimately, if the Court were to notice these documents, even as public records, they would not establish Plaintiff's actual or constructive notice because such a determination may exceed the expertise of these sources. *See* FED. R. EVID. 201(b)(2) (a fact is not subject to reasonable dispute because it "can be accurately and readily determined from sources . . . ."). Movants are not seeking merely for the Court to pull facts from these documents, *e.g.,* the date a letter was sent; they ask the Court to use the facts within them to arrive at a different factual determination, *i.e.,* actual or constructive notice. While these documents, individually or together, might retain high relevance to this inquiry, a trier of fact may consider additional sources for this determination.

### C. Procedure

Still, the materials for which Defendants seek judicial notice remain too tenuous to the Complaint for a motion to dismiss

on timeliness grounds. Although a court may take judicial notice of such documents for consideration at a motion to dismiss phase generally, Defendants cite no precedent permitting courts to do so when dismissing on the basis of statute of limitations. Seventh Circuit precedent affords more deference to the Complaint on such motions. *See Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court — that is, admits all the ingredients of an impenetrable defense — may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.,* 770 F.3d 610, 613-14 (7th Cir. 2014) (noting that dismissal at the pleading stage for an affirmative defense remains "irregular," suitable "only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense"); *Sidney Hillman,* 782 F.3d at 928 ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.") (internal quotations omitted); *Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1030 (7th Cir. 2004) ("[B]ecause the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6).").

Thus, accepting the facts alleged in the Complaint as true, Plaintiff's Complaint conforms to the applicable five-year statute of limitations. When REM knew or reasonably should have known, and when the pollution ceased, remain fact questions unripe for decision at this stage of the proceedings. *See Brownmark Films,* 682 F.3d at 690 (remarking that a statute of limitation analysis "typically turn[s] on facts not before the court at that stage in the proceedings"). In other words, it remains a question for summary judgment as to whether Defendants' theories attached to these materials are also ultimately too tenuous.

## IV. CONCLUSION

For the reasons stated herein, Indus Defendants' Motion to Dismiss [Dkt. No. 25] is denied. The Court orders the parties to submit any further materials so that the Court may rule on summary judgment, under Federal Rule of Civil Procedure 56, on statute of limitations grounds. FED. R. CIV. P. 12(d); *Geinosky v. City of Chicago,* 675 F.3d 743, 745 (7th Cir. 2012). Although the Court declines Movants' request for judicial notice [Dkt. No. 43], the Court will consider such material for summary judgment.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: 8/10/2023